The following constitutes
the order of the court. Signed December 8, 2015

*M. Elaine Hammond*

**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 14-54232 MEH |
| Pacific Thomas Corporation, | ) Chapter 11 |
| Debtor. | ) |
| Kyle Everett, | ) Adv. No. 14-5117 |
| Plaintiff. | ) |
| v. | ) |
| Thomas Capital Investments, | ) Date: October 7, 2015 |
| Defendant. | ) Time: 9:00 a.m. |
| | ) Ctrm: 3020 (San Jose) |

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

## MEMORANDUM DECISION

Kyle Everett, Chapter 11 trustee ("Plaintiff") of the bankruptcy estate of Pacific Thomas Corporation ("PTC" or "Debtor") brought this adversary proceeding to recover prepetition and postpetition transfers from Debtor's estate, either directly or by Pacific Trading Ventures ("PTV") to Thomas Capital Investments ("Defendant").

1  This court has jurisdiction pursuant to 28 U.S.C. § 1334. Avoidance is sought

2  pursuant to Bankruptcy Code[1] §§ 547(b), 549 and 548(a). These are core proceedings

3  pursuant to 28 U.S.C. § 157(b)(2)(F) and (H). The Plaintiff and Defendant expressly

4  consented to entry of a final order by this court in the complaint and answer, respectively.

5  During discovery, the Plaintiff served Defendant with interrogatories, requests for

6  production of documents, and requests for admissions. Defendant acknowledged receipt of

7  the discovery requests but failed to respond. Pursuant to FRCP 36(a)(3), made applicable by

8  FRBP 7036, the requests for admission are admitted. A matter admitted under FRCP 36 is

9  conclusively established unless the court permits the admission to be withdrawn. FRCP

10 36(b). Defendant did not file a motion to withdraw its admissions.

11 As a result, Defendant admits the facts supporting the Plaintiff's claims, as provided in

12 the following analysis.

13

14 ***Avoidance of Transfers***

15     **1. <u>Section 547(b)</u>:**

16 A trustee may avoid any transfer of an interest of the debtor in property--
   (1) to or for the benefit of a creditor;

17 (2) for or on account of an antecedent debt owed by the debtor before such transfer

18       was made;
   (3) made while the debtor was insolvent;

19 (4) made—

20       (A) on or within 90 days before the date of the filing of the petition; or
         (B) between ninety days and one year before the date of the filing of the

21       petition, if such creditor at the time of such transfer was an insider; and

22 (5) that enables such creditor to receive more than such creditor would receive if--
         (A) the case were a case under chapter 7 of this title;

23       (B) the transfer had not been made; and

24       (C) such creditor received payment of such debt to the extent provided by the
         provisions of this title.

25 11 U.S.C. § 547(b).

26 Plaintiff has established all of these elements by way of Defendant's admissions:

27 _____

[1] 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code")

28

1     Debtor filed a chapter 11 petition on August 6, 2012.

2     On or about January 9, 2003, Debtor and PTV entered into a written Management

3  Agreement that was subsequently amended, through which PTV agreed to provide property

4  management services to Debtor at Debtor's self-storage facilities located at 2619 East 12th

5  Street in Oakland, California (the "Self-Storage Facility"), which are located on, and represent

6  a portion of, the premises previously owned by Debtor, including agreeing to maintain, to

7  operate, to manage, and to supervise the Self- Storage Facility.

8     Defendant received payments made by the Debtor, or PTV acting on the Debtor's

9  behalf, including but not limited to the transfers set forth in Exhibit "1" to the Complaint

10  between the dates of August 6, 2010 and October 9, 2013 ("Transfer" or "Transfers"). Each

11  Transfer was made on the date indicated on Exhibit "1" to the Complaint. Each Transfer was

12  a transfer of an interest of the Debtor in property. Defendant was the initial transferee or the

13  entity for whose benefit the transfer was made pursuant to § 550(a)(l) of the Bankruptcy

14  Code.

15     Defendant was in control of the Debtor at the time each Transfer was made, and is

16  thus an insider of the Debtor under § 101(31)(B)(iii). Defendant was a creditor of the Debtor

17  during the preference period between August 6, 2011 and August 6, 2012. Each Transfer was,

18  at the time it was made, on account of an antecedent debt owed Defendant by the Debtor.

19  Each Transfer was made for Defendant's benefit.

20     Debtor was insolvent at the time of each Transfer.

21     Defendant has not paid or turned over each Transfer to Plaintiff.

22     With respect to each Transfer that occurred between August 6, 2011 and August 6,

23  2012, Defendant received more than it would have received if: (1) the Debtor's estate was

24  liquidated under chapter 7 of the Bankruptcy Code; (2) the Transfer had not been made; and

25  (3) Defendant received payment of such debt to the extent provided by the Bankruptcy Code.

26     For each Transfer, Defendant did not have a defense pursuant to § 547(b) of the

27  Bankruptcy Code.

28

**2. Section 549**

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--

(1) that occurs after the commencement of the case; and

(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549.

Each element of an unauthorized post-petition transfer has been proven by Defendant's admissions:

Debtor filed a chapter 11 petition on August 6, 2012. Defendant received payments made by the Debtor, or PTV acting on the Debtor's behalf, including but not limited to the Transfers set forth in Exhibit "1" to the Complaint between the dates of August 7, 2012 and October 9, 2013. Each Transfer was made on the date indicated on Exhibit "1" to the Complaint. Each Transfer was a transfer of an interest of the Debtor in property.

Each Transfer set forth on Exhibit 1 to the Complaint that occurred after August 6, 2012 (the "Post-Petition Period") occurred after the commencement of Bankruptcy Case No. 14-54232 MEH (formerly case no. 12-46534) filed in this court. Each Transfer set forth on Exhibit 1 to the Complaint that occurred during the Post-Petition Period was not authorized by the Bankruptcy Code. Defendant has not paid or turned over each Transfer.

**3. Section 548(a)**

Under § 548(a),

(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

   (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

   (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a).

Plaintiff has established the elements of a constructive fraudulent transfer under § 548(a)(1)(B) by way of the following admissions:

Debtor filed a chapter 11 petition on August 6, 2012.

Defendant received payments made by the Debtor, or PTV acting on the Debtor's behalf, including but not limited to the Transfers set forth in Exhibit "1" to the Complaint between the dates of August 6, 2010 and August 6, 2012. Each Transfer was made on the date indicated on Exhibit "1" to the Complaint. Each Transfer was a transfer of an interest of the Debtor in property.

Defendant was in control of the Debtor at the time each Transfer was made. Each Transfer was made for Defendant's benefit.

Debtor received less than reasonably equivalent value in exchange for each Transfer, and was insolvent at the time of each Transfer.

Defendant has not paid or turned over each Transfer to Plaintiff.

### Recovery of Transfers

Plaintiff's complaint does not specify that recovery of the avoided transfers is sought pursuant to Bankruptcy Code § 550. However, it is clear from the pleadings and trial that the

parties understood that the Plaintiff intended to seek recovery under § 550 and obtain a judgment against Defendant. [2] On this basis, the court finds that Defendant was on notice that the Plaintiff sought avoidance and recovery of the Transfers from Defendant. See FRBP 7015, applying FRCP 15(b)(2), which states: "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respect as if raised in the pleadings. A party may move –at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

At trial, Plaintiff entered into evidence Exhibit "1" to the Complaint, a spreadsheet that identified Defendant as the initial transferee or entity for whose benefit the transfer was made. Defendant stipulated to the admissibility of this evidence. Further, its admissions conclusively establish that Defendant was the initial transferee or entity for whose benefit the transfer was made, pursuant to § 550(a)(1).

***Defenses Presented***

Despite the admissions, Defendant was provided the opportunity to introduce evidence in support of its defenses. Defendant argued that the Transfers should not be avoided on the basis that the Debtor was not insolvent prior to the 90 day period that Debtor is presumptively insolvent under § 547(f), that Defendant provided value to PTC in exchange for the transfers, and that the Transfers were not transfers of property of the estate. None of these defenses is supported by the evidence admitted at trial.

---

[2] The Complaint states that it is to "avoid and recover avoidable transfers" and includes in the prayer specific requests for recovery of each type of avoided transfer. The answer also states in the title that it is an answer to the complaint to "avoid and recovery avoidable transfers." Further, the Plaintiff's requests for admission specifically reference § 550(a)(1).

**1. Insolvency**

Defendant correctly argues that the Plaintiff bears the burden of proof to establish insolvency for all periods earlier than the 90th day prior to the Petition Date. *See* § 547(f). The court finds that the Plaintiff satisfied his initial burden through Defendant's admission that PTC was insolvent at the time each of the Transfers were received. *See* RFA # 2, 7, 13.

In its defense, Defendant sought to establish that PTC was solvent during the relevant periods. In an action to recover a preference or fraudulent transfer, insolvency may be determined on the basis of a "balance sheet" test.[3] This correlates with the definition of "insolvent" in § 101(32) that a corporation is insolvent if the sum of the entity's debts is greater than all of the entity's property at a fair valuation.

Defendant sought to establish that PTC was not insolvent during 2010 based on email correspondence of May 4, 2010 from a representative of Defendant, on behalf of PTC, to its then-lender during negotiations of a loan extension. The email includes a list of properties owned by PTC and affiliated companies and their appraised value. Based on the numbers included in the email, the PTC properties had a value of approximately $19 million. PTC's witness, Randall Whitney, then compared this value to PTC's total liabilities of $15,111,415 as set forth in PTC's 2010 balance sheet.

However, the 2010 balance sheet provided a total asset value of $14,563,204 and liabilities of $15,111,415. The court finds the 2010 balance sheet to provide better evidence of the value of PTC's assets than a single email regarding property values sent during a negotiation. Thus, under the balance sheet test, PTC was insolvent in 2010. The balance sheet for 2011 also shows PTC to be insolvent. No evidence was presented as to PTC's solvency in 2012.

---

[3] In a fraudulent transfer action, a fragile financial condition may also be established if the transfer left the debtor with unreasonably small capital (§ 548(a)(1)(B)(ii)(II)) or if the debtor knowingly incurred debt beyond its ability to repay (§ 548(a)(1)(B)(ii)(III)). Neither of these arguments was raised at trial.

### 2. Value Provided by PTC

The applicable means of determining whether value was provided by PTC varies in accordance with the statutory basis upon which the Plaintiff established an avoidable transfer.

Fraudulent Transfers

Pursuant to § 548(a)(1)(B), a transfer made by the debtor within 2 years prior to the filing of the petition may not be avoided if the debtor received "reasonably equivalent value" in exchange for the transfer. This requires a two part analysis: first, whether the debtor received any value, and if so, whether such value was "reasonably equivalent" to what the debtor transferred. Transfers that satisfy a legitimate obligation are for value. Whether the value is reasonably equivalent requires a comparison of the value of what was transferred and received. The determination of reasonably equivalent value is a question of fact. *See generally*, 5 Collier on Bankruptcy, ¶ 548.05[2] (16th ed. 2012).

The Plaintiff established that a total of $154,571.55 was transferred to Defendant by PTC between August 6, 2010 and August 5, 2011. The QuickBooks report provides that the majority of these transfers were described as "Funds Transfer – Per George" or "Funds Transfer – Per Randall". Mr. Whitney testified that George Yang was Defendant's employee until March 2011. He further testified that Defendant performed work on behalf of PTC and that Defendant charged PTC for its services. Mr. Whitney's testimony is supported by Defendant's meeting agendas from 2009 which include matters that purportedly relate to work performed for PTC and emails with Summit Bank in April and May 2010. He further testified that Defendant used the funds it received from PTC to pay the salaries and benefits of Mr. Yang and Mr. Whitney, office rent and expenses, and an administrative assistant. By Mr. Whitney's calculation, approximately 60 – 65% of the work performed by Defendant was attributable to PTC.

There are two problems with the evidence provided. First, there is no documentary evidence indicating work was performed by Defendant for PTC's benefit during the fraudulent transfer period. The evidence presented precedes the fraudulent transfer period by three months to a year. Second, there is no evidence that the funds transferred by PTC to Defendant correlate to the work performed – as opposed to the funds needed by Defendant. No testimony or evidence explains on what basis Defendant billed PTC for its services. There are no invoices. Alternatively, if Defendant simply received support from numerous companies, there is no evidence that any other company provided a proportionate share of support. In the absence of such evidence, there is no basis to rebut Defendant's admission that PTC did not receive reasonably equivalent value in exchange for each transfer.

Prepetition Preferences

Preferential transfers established under § 547(b) may not be avoided to the extent that the transfer recipient establishes either that it provided new value to the debtor after the transfer was received, § 547(c)(4), or that the transfer was a contemporaneous exchange for new value, § 547(c)(1).

*New Value Defense to Preference*

The new value defense to a preference is set forth in § 547(c)(4). It provides that a transfer may not be avoided to the extent that after the transfer, the creditor gave new value to or for the benefit of the debtor not secured by an unavoidable security interest and "on account of which the debtor did not make an otherwise unavoidable transfer" to or for the benefit of the creditor. The means of calculating and applying subsequent new value to a series of transfers was set forth by the Ninth Circuit in *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228 (9th Cir. 1995). In essence, the analysis requires a comparison of each preferential transfer and the new value provided subsequent to such transfers so that

subsequent advances of new value may be used to offset prior preferences, even if they are not immediately prior.

The Plaintiff established that all transfers made by PTC to Defendant between August 18, 2011 and July 21, 2012 were preferences. Defendant did not provide any evidence of new value provided in a specific amount after any of these transfers. Instead, Mr. Whitney testified about general work performed by Defendant on PTC's behalf. The primary evidence provided in support of his testimony are agendas of Defendant meetings held between July 6 and October 5, 2009, which include as agenda items work that Mr. Whitney testified was on behalf of PTC. Accepting Mr. Whitney's testimony as true, no evidence was provided of new value provided by Defendant after August 2011 – thus, no evidence of subsequent new value was provided. Additionally, notably absent from the evidence provided are invoices or any means of determining the value of any work provided by Defendant for PTC's benefit. On this basis, the court finds that Defendant failed to establish a new value defense to the preferential transfers.

*Contemporaneous Exchange Defense to Preference*

The contemporaneous exchange defense is set forth in § 547(c)(1). It provides that to the extent the parties intended the transfer to be a contemporaneous exchange for new value and it was in fact a substantially contemporaneous exchange, then such transfer may not be avoided. The classic example of this is payment by check at the time goods are received from a debtor.

As above, Defendant did not provide any evidence of value provided by it to PTC between August 18, 2011 and July 21, 2012. Thus, there is no basis to find that any of the transfers received during this time were intended to be contemporaneous exchanges for new value. The court finds that Defendant failed to establish a contemporaneous exchange defense to the preferential transfers.

1    Postpetition Transfers

2         Value provided is not generally recognized as a defense to avoidance of post-petition

3    transfers pursuant to § 549.  Further, no evidence was provided by Defendant of post-petition

4    value it provided to PTC in exchange for the transfers and Defendant did not argue that the

5    transfers were made in the ordinary course of PTC's business.

6

7         **3.  Property of the Estate**

8         Finally, Defendant argues that the transfers were not property of the estate as a lease

9    agreement controlled the relationship – and right to funds – between PTC and PTV.  This

10   argument was the subject of trial in a separate adversary proceeding arising out of this

11   bankruptcy case.  As stated more fully in the Amended Decision after Trial entered on

12   November 4, 2014,[4] the court did not find this argument persuasive and ruled that a

13   management agreement remained the governing agreement between the parties.  Defendant

14   asserts that as it was not a party to the prior litigation, and the prior decision remains on

15   appeal, this remains a disputed issue in this adversary proceeding.

16        In this case, Plaintiff established by Defendant's admission that each Transfer was a

17   transfer of an interest of the Debtor in property.  Defendant sought to rebut its own admission

18   through Mr. Whitney's testimony, along with the management agreement, lease, lease

19   extension and lease amendment.  Defendant's evidence also included the transcript from the

20   trial in the prior adversary proceeding.  On the basis of the evidence presented, the court does

21   not find Defendant's argument persuasive in this adversary proceeding—particularly when

22   taking into consideration the testimony introduced through the prior trial transcript.  The

23   evidence presented is insufficient to overcome Defendant's admission that each transfer was a

24   transfer of an interest in Debtor's property.

25

26

27   _____

[4] Everett v. Whitney, et al., Adversary Proc. No. 14-5114, Docket # 210

28

**4. Conclusion**

      For the reasons stated herein, the court finds that Plaintiff established that Defendant received $341,059.51 in Transfers that are avoided pursuant to §§ 547, 548 or 549, and recoverable from Defendant pursuant to § 550. Accordingly, judgment for Plaintiff is being entered contemporaneous with this Decision.

***END OF MEMORANDUM DECISION***

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

**UNITED STATES BANKRUPTCY COURT**
**for the Northern District of California**

## COURT SERVICE LIST

<u>Via ECF:</u>

All Recipients